UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ALAN CURRY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 1:15-cv-00200-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Gregory Alan Curry ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

# FACTS AND PRIOR PROCEEDINGS

On November 21, 2011, Plaintiff filed an application for disability insurance benefits. AR 118-21.[1] Plaintiff alleged that he became disabled on February 17, 2011, due to kidney stones, high blood pressure, a bulging disc in the lower back and migraine headaches. AR 142-56. Plaintiff's application was denied initially and on reconsideration. AR 61-64, 67-71. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ G. Ross Wheatley held a hearing on May 1, 2013, and issued an order denying benefits on June 13, 2013. AR 8-17, 22-54. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on May 1, 2013, in Stockton, California. AR 22-54. Plaintiff appeared and testified. He was represented by counsel, Steve Gimlin. AR 24-25. Impartial Vocational Expert ("VE") Steven Schmidt also appeared. AR 24.

In response to questioning by the ALJ, Plaintiff testified that he was 56 years old, 6 feet tall and weighed 310 pounds. AR 27-28. Plaintiff graduated from high school, but did not attend college or receive occupational training. He can read and write, add and subtract and multiply and divide. AR 28-29.

Plaintiff testified that he stopped working in 2011 because of the frequency of his pain. He started making mistakes, getting very little sleep and taking a lot of pain pills. He is not currently working. AR 29-30. Plaintiff confirmed that he suffers from kidney stones, lower-back pain related to disc, migraines and hypertension or high blood pressure. He also confirmed that he takes medication for his hypertension, and if he is not under any stress or pain, his blood pressure is almost perfect. AR 30-31.

Plaintiff reported that he only gets one or two migraines a year since he started taking medication called Inderal. He also takes Tylenol and codeine to help with his pain. AR 31.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

With respect to his weight, Plaintiff reported that his doctors have not ever recommended any type of weight-reduction program, but they have recommended exercise. Plaintiff said that he was able to do a little bit of exercise, and will "get out there and play ball with the kids." AR 31. His doctors did not tell him to adjust his diet "because for the most part" he is "pretty healthy" other than the "kidney stones" and his back. His kidney stones cause his back to flare up. AR 32.

With respect to his kidney stones, Plaintiff testified that every week he will pass either some kind of pepper flakes or sand, which is constant and very painful. Occasionally, he will pass larger stones. In the past year, he estimated passing 50 to 60 stones. AR 32-34. He takes allopurinol, which his doctor said did not seem to be doing any good. AR 33.

When asked about the frequency of his medical treatment, Plaintiff testified that he had not seen his doctor as much as he should have because of financial reasons. He has no medical coverage. However, Pfizer is providing him with medications for free, which has helped. AR 35-36. Plaintiff believed that his left kidney was full of stones, but he could not afford an x-ray. AR 38-39.

Plaintiff reported that Dr. Eagan from Kaiser did not think there was anything else they could do for Plaintiff's kidney stones. AR 37. However, Plaintiff testified that he has had surgery to get stones unblocked. He has had a torso lobotomy where they cut stones from his back. He also has had stones blasted with ultrasound and a laser. These processes have been successful. AR 37-38.

When asked about his back, Plaintiff confirmed that when he has problems passing a stone his back gets tight. It causes the bulging disc to flare up. He has had an MRI, which showed that he has a bulging disc between L4 and 5. He went to physical therapy for six weeks, which helped at the time. He also does stretching exercises. Plaintiff explained that the pain is in the middle of the back and travels down the back of his left leg to his knee. He has never had surgery for his back. AR 40-42.

When questioned about his daily activities, Plaintiff testified that on a good day he walks around inside of his house. On a bad day, he lies in bed, sits on the couch, rolls on the floor, soaks in the hot tub and does whatever he can to get comfortable. He usually goes to the toilet every 20-30 minutes. AR 42-43.

Plaintiff testified that he could walk less than a block and could stand for a short period of time. He could lift 10, 15, 20 pounds and does not have any issues with respect to the use of his arms

or hands. AR 44. Plaintiff mostly watches TV while at home, and very rarely goes on the computer. He also reads. AR 44-45. Although he has a driver's license, he had not driven in a couple of years. He lives with his wife, son, two daughters and a granddaughter. AR 46. He does not socialize with anyone outside of the house. He last attended church about 11 months before the hearing. Prior to that, he would go pretty much every Sunday. AR 46-47. Plaintiff is able to bathe and dress himself, but he does not cook, shop or help with housework. AR 47-48. Plaintiff stopped smoking cigarettes a year prior to the hearing and now uses an electronic cigarette. AR 48.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Stephen Schmidt. The VE testified that Plaintiff's past work was classified as guard. AR 51. In the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience capable of performing medium work with the following limitations: avoid all hazards, use of hazardous machinery and all exposure to unprotected heights. The VE testified that this person could perform Plaintiff's past work. AR 52.

For the second hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience capable of performing light work with the following limitations: frequent ladders, ropes, and scaffolds, ramps, stairs, balancing, stooping, crouching, kneeling, or crawling; should avoid all use of hazardous machinery and all exposure to unprotected heights. The VE testified that this person could perform Plaintiff's past work. AR 52-53. If the ALJ added to either of the hypotheticals that due to a combination of medical conditions and associated pain, this person would have three or more unexcused or unscheduled absences per month, it would preclude all work. AR 53.

For the third hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience capable of performing light work with the following limitations: a sit/stand option provided that the person is not off task more than 10% of the period; no ladders, ropes, or scaffolds; frequent stairs, balancing, stooping, crouching, kneeling and crawling; and must avoid all use of hazardous machinery and exposure to unprotected heights. The VE testified that this person could not perform Plaintiff's past work. The VE indicated that off task 10% precludes competitive employment. AR 53.

Following the ALJ's questioning, Plaintiff's counsel elicited testimony from the VE. Counsel asked the VE to assume the same restrictions posed in hypothetical three and that the individual should avoid extreme heat and cold. The VE testified that this would preclude Plaintiff's past work. AR 54.

For the next hypothetical, counsel asked the VE to assume all the same restrictions as posed in hypothetical number three and that the person would need to take five unscheduled breaks lasting up to 30 minutes each with the option of lying down. The VE testified that this person would not be able to perform Plaintiff's past work or be competitive in the work environment. AR 54-55.

**Medical Record**

The entire medical record was reviewed by the Court. AR 202-363. The relevant medical evidence, summarized here, will be referenced below as necessary to this Court's decision.

On March 5, 2011, Plaintiff sought treatment from Dr. David Hilburn. Plaintiff complained of a kidney stone with lower back pain and urine in his blood for three weeks. On examination, Plaintiff's lumbosacral spine area revealed no local tenderness or mass and no painful or reduced lower spine range of motion. Straight leg raise was negative and his motor strength and sensation were normal. Plaintiff's urinalysis showed blood. Dr. Hilburn planned to treat Plaintiff with pain medications and time off work. Dr. Hilburn hoped the pain would lessen and Plaintiff would be able to return to work within the week. AR 204-05.

On May 7, 2011, Plaintiff sought follow-up treatment from Dr. Hilburn and an extension of his disability due to kidney stones. Plaintiff continued to have back pain due to stones, but had not passed one "in a while." AR 202. Dr. Hilburn noted that Plaintiff had chronic kidney stone problems and continued to have back pain. Dr. Hilburn planned to give Plaintiff a disability extension. AR 202-03.

On November 15, 2011, Plaintiff sought treatment at a urology clinic in Modesto, California. Plaintiff reported taking allopurinol and Tylenol, and passing multiple stones since his last urology consultation. Plaintiff also reported that he had lost his insurance. With regard to symptoms, Plaintiff indicated that he had mild soreness, flank pain and blood when urinating. On physical examination, Plaintiff had costovertebral angle tenderness bilaterally. He denied inguinal and groin pain. Plaintiff's symptoms were mild, and he was stable and in no acute stress. Plaintiff was to continue with allopurinol for stone prevention and Tylenol for pain. AR 224-25.

On February 28, 2012, Dr. Hilburn was notified that Plaintiff had been accepted into the Pfizer program for his Norvasc medication. AR 266.

On April 12, 2012, Dr. Frank Chen completed a consultative internal medicine examination. Dr. Chen noted that Plaintiff had a history of kidney stones, hypertension with blood pressure still not under good control and low back pain with possible bulging discs. Plaintiff reported his activities of daily living to include watching TV, using a computer, listening to music, reading and taking walks. Plaintiff also drove, attended church, did photography and fished. On physical examination, Plaintiff walked without difficulty and sat comfortably during the exam. His back was within normal limits as were his coordination, station and gait. He also had normal muscle bulk and tone, with motor strength of 5/5 in the upper and lower extremities bilaterally. Dr. Chen diagnosed Plaintiff with chronic recurrent kidney stones, hypertension, low back pain due to myalgia versus joint disease of the lumbar spine and obesity. Dr. Chen opined that Plaintiff could stand and walk for six hours in an eight-hour workday and could sit for six hours in an eight-hour workday. He also could lift and carry 50 pounds occasionally and 25 pounds frequently. There were no other functional limitations. AR 231-32.

On July 26, 2012, Plaintiff sought follow-up treatment with Dr. Hilburn for his blood pressure. Plaintiff also reported continuing problems with kidney stones and that he was applying for permanent disability. On physical examination, Plaintiff was alert and in no acute distress. Plaintiff was instructed to continue his current medications. Dr. Hilburn indicated that records would be obtained from the urologist "who stated there was nothing he could do about [Plaintiff's] chronic stone formation." AR 249-50.

On March 4, 2013, Dr. Hilburn completed a Medical Opinion Re: Ability to Do Work-Related Activities (Physical) form. Dr. Hilburn opined that Plaintiff could lift and carry less than 10 pounds, could stand and walk less than 2 hours in an 8-hour day and could sit less than 2 hours in an 8-hour day. Dr. Hilburn further opined that Plaintiff needed the opportunity to shift at will from sitting or standing/walking and would need to lie down 5-6 times per shift. Plaintiff could sit 10 minutes before changing positions, stand 5 minutes before changing positions and must walk every 10 minutes for 5 minutes each time. With regard to postural activities, Dr. Hilburn opined that Plaintiff occasionally could twist, crouch and climb stairs, but could never stoop (bend) or climb ladders. Plaintiff's

reaching and pushing/pulling were also affected by his impairment.  With regard to environmental restrictions, Dr. Hilburn opined that Plaintiff must avoid even moderate exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents/cleaners and chemicals.  Dr. Hilburn anticipated that Plaintiff's impairments or treatment would cause him to be absent from work more than four days per month.  AR 273-76.

On March 28, 2013, Plaintiff sought treatment from Dr. Hilburn, along with completion of his social security forms.  On examination, Plaintiff was not in any apparent distress.  Dr. Hilburn noted that Plaintiff had recurrent kidney stone pain, 1-2 times per day 4-5 times per week.  Plaintiff took pain medications regularly and medications for nausea.  Plaintiff reportedly had seen several urologists and they stated that there was nothing they could do to prevent his stones.  AR 356-57.

On the same date, Dr. Hilburn completed a second Medical Opinion Re: Ability to do Work-Related Activities (Physical) form.  Dr. Hilburn opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk less than 2 hours in an 8-hour day and could sit less than 2 hours in an 8-hour day.  Dr. Hilburn further opined that Plaintiff needed the opportunity to shift at will from sitting or standing/walking and would need to lie down 3 times per day.  Plaintiff could sit 30 minutes before changing positions, could stand 30 minutes before changing positions and must walk around every 30 minutes for 20 minutes each time.  Dr. Hibburn explained that when Plaintiff had kidney stones, which was frequent/constant, he could not function.  With regard to postural activities, Dr. Hilburn opined that Plaintiff occasionally could twist and climb stairs, but could never stoop (bend), crouch or climb ladders.  Dr. Hilburn explained that this was because of pain from stones and having to take medications.  Dr. Hilburn also indicated that Plaintiff's reaching, handling and pushing/pulling were affected because of pain.  With regard to environmental restrictions, Dr. Hilburn opined that Plaintiff must avoid even moderate exposure to extreme cold and avoid all exposure to extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents/cleaners and chemicals.  Dr. Hilburn explained that Plaintiff needed a cane for walking/stability because of pain medications.  Plaintiff also needed to keep his feet elevated because of swelling and he had no ability to kneel because of persistent knee pain.  Dr. Hilburn anticipated that

Plaintiff's impairments or treatment would cause him to be absent from work more than four days per month.  AR 277-80.

On March 28, 2013, Dr. Hilburn also completed a Lumbar Spine Medical Source Statement form.  Plaintiff was diagnosed with persistent kidney stones and had a poor prognosis.  Dr. Hilburn identified Plaintiff's symptoms as abdominal and back pain, along with persistent fatigue/nausea from his medications.  Dr. Hilburn indicated that Plaintiff had back pain which radiated to the front lower abdomen and occurred constantly.  Plaintiff also took daily medications that caused dizziness, drowsiness, irritability and stomach upset.  Dr. Hilburn opined that Plaintiff could not walk a city block without rest or severe pain.  In an eight-hour day, he could sit less than two hours and stand less than two hours.  Plaintiff needed a job that permitting shifting positions at will.  Dr. Hilburn believed that Plaintiff would need to take 5 unscheduled breaks per day for 20-30 minutes each.  He also needed to elevate his legs for 25% of the day.  Plaintiff must use a cane or other assistive device because of instability with medications.  Dr. Hilburn opined that Plaintiff could lift less than 10 pounds occasionally, but could lift 10, 20 or 50 pounds frequently.  He could never twist, stoop (bend), crouch/squat, climb ladders or climb stairs.  Dr. Hilburn estimated that Plaintiff was likely to be off task 25% or more of a typical workday.  Dr. Hilburn believed that Plaintiff was incapable of even low stress work because of his pain and pills, and he would be absent from work more than four days per month.  AR 281-85.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 8-17.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since February 17, 2011, his alleged onset date.  Further, the ALJ identified obesity, urinary tract disorder and kidney stones as severe impairments.  AR 13.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 14.  Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work.  Plaintiff could lift and/or carry ten pounds frequently, twenty pounds occasionally, could sit, stand and/or walk for six hours out of an eight-hour workday,

could frequently climb, balance, stoop, crouch, kneel and crawl, and must avoid all exposure to hazardous machinery and unprotected heights. AR 14-17. The ALJ found that Plaintiff could perform his past relevant work as a guard. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[2]

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his credibility. The Commissioner counters that substantial evidence supports the ALJ's credibility determination.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the claimant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

In this instance, at the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 15. At the second step, however, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. AR 15.

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

The Court finds that the ALJ provided clear and convincing reasons for finding Plaintiff not fully credible. AR 15-16. First, the ALJ discounted Plaintiff's credibility because he "engaged in a somewhat normal level of daily activity and interaction." AR 15. An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"); *Branham v. Colvin*, No. ED CV 15-00050-DFM, 2015 WL 8664157, at *2 (C.D. Cal. Dec. 11, 2015) (ALJ properly considered plaintiff's activities of daily living in assessing credibility; plaintiff was able to use a computer, attend church, shop, ride in a car, cook occasionally and take care of her own personal care). Here, the ALJ found that Plaintiff admitted activities of daily living that included playing basketball with the kids, watching television, going on the computer and doing email, reading and having a driver's license. AR 15, 31, 44-45. Plaintiff also went to church until eleven months prior, he socialized with his family, could shower and dress, and climb stairs in his home. AR 15, 46-47, 163. The ALJ also considered Plaintiff's report to Dr. Chen that he drove, listened to music, read, took walks, did some photography and fished. AR 15, 230.

Plaintiff agrees that an ALJ may consider activities of daily living in evaluating a disability claim, but argues that he has both good days and bad days and that the ALJ mischaracterized and oversimplified his activities, noting that he only played basketball with his kids a little bit, he stopped attending church 11 months prior to the hearing and his socializing with family was limited to the people with which he resides. Doc. 14 at pp. 7-8. Despite Plaintiff's arguments, an ALJ "may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). In this case, the ALJ concluded that "the physical and mental capabilities" required to perform plaintiff's daily activities and the social interactions "replicate[d] those necessary for obtaining and maintaining employment." AR 15. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.; see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of the

symptoms alleged can support an adverse credibility determination."). Further, if the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence then it is not Court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001).

Second, the ALJ discounted Plaintiff's allegations because he had "not generally received the type of medical treatment one would expect for a totally disabled individual." AR 15. The ALJ indicated that Plaintiff's treatment records revealed that he "received routine, infrequent, conservative and non-emergency treatment since the alleged onset date." AR 15. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); *Williams v. Colvin*, 2014 WL 4437284, at *3-4 (C.D. Cal. Sept. 9, 2014) (ALJ properly considered plaintiff's infrequent and conservative treatment as evidence to discredit plaintiff's testimony). Here, the ALJ cited evidence of the limited nature of Plaintiff's treatment. AR 15-16.

Plaintiff argues that this finding by the ALJ is error because the ALJ failed to consider Plaintiff's lack of medical insurance and limited finances. Doc. 14 at p. 9. As a general rule, the Commissioner cannot deny benefits to someone because he is too poor to obtain medical treatment that may help. *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir.1995) (citation omitted). In this instance, however, it is clear from the record that the ALJ relied primarily on the conservative nature of the treatment Plaintiff sought and received. Plaintiff argues that this, too, is error because his urologists had stated that there was nothing they could do to prevent his stones from recurring. Doc. 14 at p. 9. While Plaintiff correctly references the reported position of his urologists, the ALJ cited Plaintiff's use of medications treat his pain, including Tylenol #4, in the absence of any other measures to alleviate his condition. AR 16, 204, 225, 250. There is substantial evidence in the record to support this finding. Moreover, at the hearing, Plaintiff testified that he had success with other procedures, including surgery, ultrasounds and lasers, but medical records following his alleged onset date did not include any of these treatment modalities. AR 37-38.

Third, and finally, the ALJ found that Plaintiff's "alleged loss of function was not supported by objective medical findings." AR 15. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for

discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Batson*, 359 F.3d at 1196-97 (ALJ properly relied on objective medical evidence and medical opinions in determining credibility); *see also Parra*, 481 F.3d at 750 (ALJ reasonably found complaints of disabling knee pain not credible in light of lab tests showing knee function within normal limits). Here, the ALJ considered treatment records from March 2011 in which Plaintiff complained of back pain, but examination revealed no local tenderness or mass, no painful or reduced lower spine range of motion, negative straight leg raising, normal deep tendon reflexes, motor strength and sensation and only mild CVA tenderness. AR 15, 204-05. The ALJ also considered treatment records showing mild symptoms in November 2011, and a physical examination within normal limits in July 2012. AR 15, 224-25, 250. Plaintiff has not challenged this reason for discounting his credibility.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Gregory Alan Curry.

IT IS SO ORDERED.

Dated:   **July 25, 2016**                       /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE